# Illinois Official Reports

## Appellate Court

---

**CF SBC Pledgor 1 2012-1 Trust v. Clark/School, LLC, 2016 IL App (4th) 150568**

---

| | |
|---|---|
| Appellate Court Caption | CF SBC PLEDGOR 1 2012-1 TRUST, a Delaware Statutory Trust, Plaintiff-Appellee, v. CLARK/SCHOOL, LLC, an Illinois Limited Liability Company; and NON-RECORD CLAIMANTS and UNKNOWN OWNERS, Defendants (CLARK/SCHOOL, LLC, Defendant-Appellant). |
| District & No. | Fourth District<br>Docket No. 4-15-0568 |
| Filed<br>Rehearing denied | September 8, 2016<br>October 17, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 13-CH-252; the Hon. Craig H. DeArmond, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Rod Radjenovich, of Jeffrey Strange & Associates, of Wilmette, for appellant.<br><br>Cara M. Houck, of Miller Canfield Paddock & Stone, P.L.C., of Chicago, for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Steigmann and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff, CF SBC Pledgor 1 2012-1 Trust, a Delaware statutory trust, brought a mortgage foreclosure action against defendant, Clark/School, LLC, an Illinois limited liability company, alleging defendant was in default under the terms of the mortgage. Ultimately, plaintiff filed a motion for summary judgment, which the trial court granted. Defendant appeals, arguing genuine issues of material fact exist as to whether it was in default and, as a result, the trial court erred in granting plaintiff's motion for summary judgment. We affirm.

¶ 2                                   I. BACKGROUND

¶ 3 This is the second appeal involving the parties and the underlying mortgage foreclosure proceedings. Previously, defendant brought an interlocutory appeal after plaintiff obtained an *ex parte* order appointing a receiver over the mortgaged property. See *CF SBC Pledgor 1 2012-1 Trust v. Clark/School, LLC*, 2014 IL App (4th) 140416-U. The following recitation of facts is partially taken from our decision in that previous appeal.

¶ 4 In June 2006, defendant obtained a loan from Washington Mutual Bank that was secured by a mortgage on the property at issue, an eight-building apartment complex in Danville, Illinois. Washington Mutual Bank's interest was ultimately assigned to plaintiff. Under section 4.3 of the parties' mortgage security agreement, defendant agreed to keep the property in good condition and repair. Section 4.14 of that agreement noted the mortgage loan was being made in reliance on defendant's continued existence as a limited liability company (LLC). Under that section, defendant agreed to "not alter its name, jurisdiction of organization, structure, ownership or control without the prior written consent of the Lender" and to "do all things necessary to preserve and maintain [its] existence and to ensure its continuous right to carry on its business."

¶ 5 Section 5 of the mortgage security agreement set forth provisions relating to default. Section 5.1(c) defined an "Event of Default" to include defendant's failure to perform its obligations under the parties' agreement when that "failure continues for a period of [30] days after written notice of such failure by Lender to Borrower." However, that section further provided that the notice requirement and the 30-day "cure period" did not apply under the following circumstances:

"(i) any such failure that could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under [the parties' agreements], result in harm to Lender, impairment of the Note or this Security Instrument or any other security given under any other Loan Document; (ii) any such failure that is not reasonably susceptible of being cured during such 30-day period; (iii) breach of any provision that contains an express cure period; or (iv) any breach of *** section 4.14 of this Security Instrument."

Additionally, section 5.3 of the parties' mortgage security agreement set forth the lender's remedies upon default, stating that "[u]pon the occurrence of any Event of Default all sums secured hereby shall become immediately due and payable, without notice or demand, at the option of [the] Lender." Further, it permitted the lender to "[f]oreclose this security instrument," exercise any power of sale permitted by applicable law, and sue on the note.

¶ 6 In December 2013, plaintiff filed a complaint against defendant to foreclose the mortgage. It alleged defendant was in default under the terms of the mortgage for failing to (1) maintain

the property and (2) preserve and maintain its existence as an LLC. Plaintiff asserted defendant allowed portions of the property to become uninhabitable and alleged as follows:

"More specifically, upon information and belief, a City of Danville building inspector recently inspected the Property and identified numerous issues and code violations, including, but not limited to, no electricity in multiple buildings due to non-payment by [defendant], water pipes leaking and flooding apartments, and garbage being dumped into a ravine on the Property near a city drinking water source.

\* \* \*

Additionally, upon information and belief, [defendant] has not maintained its existence with the State of Illinois as an entity in good standing, and was consequently dissolved on or about September 9, 2011."

Plaintiff attached various loan documents to its complaint, as well as e-mail correspondence between individuals identified in the e-mails as the Danville city attorney, Richard Dahlenburg; an environmental code inspector, Rick Brown; and a building inspector, Danita Anderson. The e-mails indicated the inspectors identified several maintenance issues on the property, including a lack of electricity due to nonpayment of electric bills by defendant, water leaks and flooding from frozen pipes, and "dumping cabinets and vanities into [a] ravine behind" an apartment building.

¶ 7        The same day it filed its complaint, plaintiff also filed an emergency motion to appoint a receiver pursuant to section 15-1704 of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1704 (West 2012)). It reiterated the allegations from its complaint regarding default and attached the same e-mail correspondence to its emergency motion that it attached to its complaint. Also attached to plaintiff's motion was the affidavit of Kenneth L. Frank, who averred he was a managing director of plaintiff's special servicer, CWCapital Asset Management LLC, the entity responsible for administering defendant's loan. Frank stated he had access to and knowledge of plaintiff's records regarding the loan account at issue and he could testify to the truth of the following statement: "Defendant \*\*\* is in default for failing to maintain the property at issue \*\*\* and failing to preserve and maintain [defendant's] existence as [an LLC]."

¶ 8        On December 24, 2013, the trial court granted plaintiff's emergency motion. Its docket entry stated as follows: "Matter presented to Court for review *ex*[ ]*parte*. Court grants emergency motion to appoint receiver. Order appointing receiver entered."

¶ 9        On January 21, 2014, defendant filed a petition to vacate the trial court's *ex parte* order under section 2-1401(f) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(f) (West 2012)) and a motion to dismiss plaintiff's mortgage foreclosure complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)). In connection with its petition to vacate, defendant argued plaintiff failed to comply with the necessary statutory requirements for seeking the *ex parte* appointment of a receiver. Specifically, defendant maintained plaintiff failed to comply with section 15-1706(d) of the Foreclosure Law (735 ILCS 5/15-1706(d) (West 2012)), which it asserted required a showing of good cause by sworn evidence to support a request to appoint a receiver without service upon one of the parties. Defendant argued Frank's affidavit, which was attached to plaintiff's emergency motion, "failed to show good cause." Defendant also asserted that without meeting the requirements for an *ex parte* appointment of a receiver, plaintiff was required to give defendant notice of the emergency

motion. It contended that because no notice was given, the court lacked jurisdiction over defendant and the court's *ex parte* order was void.

¶ 10 In its petition to vacate, defendant also argued that no default existed under the mortgage. Specifically, it claimed no default existed under section 4.3 of the mortgage because plaintiff failed to provide it with written notice or a 30-day "cure period" and no default existed under section 4.14 because defendant had been reinstated as an active LLC on January 10, 2014, and was, therefore, "deemed by law to have existed as an LLC without interruption" under section 35-40(d) of the Limited Liability Company Act (LLC Act) (805 ILCS 180/35-40(d) (West 2012)).

¶ 11 Finally, defendant further alleged "the circumstances cited by [p]laintiff as the basis for proceeding under the emergency motion were cured well in advance of" the filing of the emergency motion. To support this contention, defendant relied on the affidavit of Mohammed Abdul Khan, defendant's property manager. Khan averred he was notified on December 10, 2013, that power had been shut off to portions of the property due to nonpayment of the electric bill and that he paid the bill the same day. Khan further stated he became aware of a broken pipe and subsequent leak and flooding on December 11, 2013, and had water to the building turned off to stop the leak the same day. Khan asserted no emergency existed on the property on December 24, 2013.

¶ 12 In its motion to dismiss, defendant argued plaintiff's mortgage foreclosure complaint had to be dismissed because no event of default occurred under the mortgage. It reiterated the same arguments regarding the lack of default as raised in its petition to vacate. Included within the attachments to defendant's motion was a letter to defendant from the Illinois Secretary of State dated January 10, 2014. The letter noted defendant's "application for reinstatement ha[d] been placed on file" and stated, "the company has now been returned to good standing."

¶ 13 In April 2014, the trial court entered an order denying both defendant's petition to vacate and its motion to dismiss. As stated, defendant filed an interlocutory appeal challenging the court's *ex parte* order appointing a receiver over the mortgaged property. On review, we found the trial court committed no error "in ruling on plaintiff's emergency motion to appoint a receiver prior to service of the motion on defendant" and affirmed the court's judgment. *CF SBC Pledgor*, 2014 IL App (4th) 140416-U, ¶ 29.

¶ 14 In February 2015, plaintiff filed a motion for summary judgment in the underlying proceedings. It asserted defendant was in default of the terms of the loan and mortgage documents on the date it filed its complaint, December 24, 2013, because defendant failed to (1) maintain the property at issue in good condition such that certain parts of the property were rendered uninhabitable and (2) preserve and maintain its existence as an LLC. Plaintiff alleged it performed all of its duties under the loan and mortgage documents and, upon learning of defendant's default, it accelerated the maturity of the loan. It asserted that, despite its demand of full payment, defendant had not repaid the loan.

¶ 15 Plaintiff attached various documents to its motion, including loan documents, previous court orders, the same e-mail exchange attached to its complaint, and the affidavit of James R. DeAngelo. DeAngelo averred he was the vice president of CWCapital Asset Management LLC, the entity responsible for administering defendant's loan. He asserted he had access to and knowledge of the loan and its administration. DeAngelo further averred defendant "defaulted *** by failing to maintain the property *** in good condition, and by failing to preserve and maintain its existence as [an LLC]."

- 4 -

¶ 16    In March 2015, defendant filed a response to plaintiff's motion for summary judgment. It argued plaintiff's motion lacked any affirmative evidence of default by defendant under either section 4.3 or section 4.14 of the mortgage documents. Regarding the alleged default by defendant in failing to maintain the property, it asserted DeAngelo's affidavit contained only a single "conclusory sentence" and was, therefore, insufficient. As for defendant's alleged default in failing to preserve and maintain its existence as an LLC, defendant asserted its later reinstatement by the Secretary of State resulted in it being deemed to have continued as an LLC without interruption, notwithstanding its prior dissolution. Defendant maintained that, as a result, plaintiff failed to meet its summary judgment burden of establishing each element of its claim and the absence of a genuine issue of material fact.

¶ 17    In April 2015, the trial court conducted a hearing and found plaintiff entitled to summary judgment. In May 2015, it entered an order for judgment of foreclosure, finding defendant in default as alleged by plaintiff. In July 2015, the court entered an order approving the sale of the property.

¶ 18    This appeal followed.

¶ 19                               II. ANALYSIS

¶ 20    On appeal, defendant argues the trial court erred by granting plaintiff's motion for summary judgment. It contends plaintiff failed to establish, by affirmative evidence, any default by it under section 4.3 of the mortgage for failing to maintain the property at issue in good condition. Defendant additionally argues it was not in default under section 4.14 of the mortgage and loan documents for failing to maintain its existence as an LLC. It argues that, although it had been dissolved at the time plaintiff's complaint was filed, its status as an LLC was later reinstated and, therefore, its existence as an LLC should be deemed to have continued without interruption pursuant to section 35-40(d) of the LLC Act (805 ILCS 180/35-40(d) (West 2012)).

¶ 21    Summary judgment is appropriate when "the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." *Gurba v. Community High School District No. 155*, 2015 IL 118332, ¶ 10, 40 N.E.3d 1. "The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists." *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 14, 27 N.E.3d 67. "The interpretation of a statute is a matter of law appropriate for summary judgment." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 20, 43 N.E.3d 1005. The trial court's grant of a party's summary judgment motion is subject to *de novo* review. *Wade v. Wal-Mart Stores, Inc.*, 2015 IL App (4th) 141067, ¶ 12, 39 N.E.3d 1141.

¶ 22    As stated, this matter was previously before this court pursuant to an interlocutory appeal by defendant. In that first appeal, defendant challenged the trial court's *ex parte* appointment of a receiver but raised the same arguments with respect to plaintiff's allegations of default that it now raises in this second appeal. In affirming the trial court's judgment, we noted section 15-1706(d) of the Foreclosure Law (735 ILCS 5/15-1706(d) (West 2012)) permitted the court to rule on an *ex parte* motion to appoint a receiver when the nonmoving party was in default. *CF SBC Pledgor*, 2014 IL App (4th) 140416-U, ¶ 24. We found that defendant was in default under section 4.14 of the mortgage for failing to maintain its existence as an LLC because, at

the time the trial court considered plaintiff's *ex parte* motion, defendant was not in good standing with the Secretary of State and had been dissolved. *Id.* ¶ 26. In so holding, we rejected defendant's contention that, since it was later reinstated as an LLC by the Secretary of State, its existence should have been deemed to have continued without interruption such that it was not in default of the terms of the parties' agreement. *Id.* ¶ 27.

¶ 23    Defendant now challenges the trial court's entry of summary judgment and raises the same arguments. Specifically, it cites the relation-back provision in section 35-40(d) of the LLC Act (805 ILCS 180/35-40(d) (West 2012)) and contends that although it was administratively dissolved at the time plaintiff filed its complaint, it was reinstated as an LLC in January 2014 and, therefore, must be deemed to have continued without interruption. Again, we reject defendant's argument.

¶ 24    Section 35-40(d) of the LLC Act (805 ILCS 180/35-40(d) (West 2012)) provides as follows:

> "Upon the filing of the application for reinstatement, the [LLC] existence shall be deemed to have continued without interruption from the date of the issuance of the notice of dissolution, and the [LLC] shall stand revived with the powers, duties, and obligations as if it had not been dissolved; and all acts and proceedings of its members or managers, acting or purporting to act in that capacity, that would have been legal and valid but for the dissolution, shall stand ratified and confirmed."

Our research reveals no case addressing section 35-40(d) of the LLC Act or the specific issue presented on appeal. However, we note section 12.45 of the Business Corporation Act of 1983 (805 ILCS 5/12.45(d) (West 2012)) contains a similar relation-back provision. Cases addressing that provision are instructive.

¶ 25    Section 12.45(d) of the Business Corporation Act provides as follows:

> "Upon the filing of the application for reinstatement, the corporate existence for all purposes shall be deemed to have continued without interruption from the date of the issuance of the certificate of dissolution, and the corporation shall stand revived with such powers, duties and obligations as if it had not been dissolved; and all acts and proceedings of its officers, directors and shareholders, acting or purporting to act as such, which would have been legal and valid but for such dissolution, shall stand ratified and confirmed." *Id.*

This section "permits a reinstated corporation to ratify actions taken on its behalf while it was dissolved, giving those actions legal effect from the time they were taken." *Chicago Title & Trust Co. v. Brooklyn Bagel Boys, Inc.*, 222 Ill. App. 3d 413, 420, 584 N.E.2d 142, 146 (1991). However, relation back "cannot be invoked to shift individual liability to the corporation, nor to impose a legal fiction that belies *** real world fact[s]." *Department of Revenue v. Semenek*, 194 Ill. App. 3d 616, 619, 551 N.E.2d 314, 316 (1990).

¶ 26    In *Virendra S. Bisla, M.D., Ltd. v. Parvaiz*, 379 Ill. App. 3d 567, 574, 884 N.E.2d 790, 796 (2008), the First District rejected an argument that the Business Corporation Act's relation-back provision could be applied to prevent a finding of a breach of an employment agreement based on the involuntary dissolution of a medical corporation. In that case, the parties, a medical corporation and a doctor, entered into an employment agreement, which defined dissolution of the corporation as an event that automatically terminated the agreement.

*Id.* at 571, 884 N.E.2d at 794. During the parties' employment relationship, the corporation was involuntarily dissolved and, several months later, reinstated. *Id.*

¶ 27    On appeal, the medical corporation argued the trial court erred in finding that dissolution of the corporation constituted a material breach of the employment agreement because the relation-back provision in section 12.45(d) applied. *Id.* at 573, 884 N.E.2d at 796. As stated, the First District disagreed, noting the parties' agreement contained no provision stating it remained valid when the medical corporation was dissolved and finding the corporation could not "successfully argue that the clause [in the parties' agreement regarding dissolution of the corporation did] not mean what its plain language set[ ] forth." *Id.* at 574, 884 N.E.2d at 796.

¶ 28    In this case, section 4.14 of the parties' mortgage security agreement plainly stated that the mortgage loan was made in reliance on defendant's continued existence as an LLC. Defendant agreed to maintain its existence and ensure its continuous right to carry on its business. The parties' agreement defined defendant's breach of section 4.14 as an "Event of Default." In its December 2013 complaint, plaintiff alleged defendant failed to maintain its existence as an LLC because it was not in good standing with the Secretary of State and dissolved in September 2011. Defendant acknowledges that, at the time plaintiff filed its complaint, it was not in good standing and had been dissolved. Under these circumstances, we hold the LLC Act's relation-back provision does not apply to prevent defendant's dissolution from constituting an "Event of Default" under the parties' agreement.

¶ 29    The relation-back provision allows a reinstated LLC to ratify actions taken on its behalf while it was dissolved but, like the relation-back provision in the Business Corporation Act, cannot impose a legal fiction that belies actual, real world facts. As in the initial appeal, we find the trial court correctly addressed the relation-back provision when stating it does not "apply in this situation where [defendant's] failure to maintain [its LLC] status triggers by contract, by agreement of the parties entered into by both parties freely and voluntarily[,] the default." The undisputed facts in this case show defendant defaulted by failing to maintain its existence as an LLC. Like in *Bisla*, nothing in the parties' agreement addressed the effect of reinstatement after dissolution, and the plain language of the agreement cannot be disputed.

¶ 30    We note that, in its reply brief, defendant argues any breach for failing to maintain its existence as an LLC was not a material breach warranting a judgment of foreclosure. However, "points not argued in an appellant's opening brief 'are waived and shall not be raised in the reply brief.' " *People v. Smith*, 2015 IL 116572, ¶ 22, 26 N.E.3d 335 (quoting Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008)). As defendant raised this particular argument for the first time in its reply brief, it is not properly before this court, and we decline to address it.

¶ 31    Here, the trial court committed no error in finding defendant was in default under the mortgage security agreement for failing to maintain its existence as an LLC. Thus, no genuine issue of material fact exists with respect to plaintiff's claims of default, and summary judgment was appropriately entered in its favor. As a result of this finding, it is unnecessary for us to address the parties' remaining arguments regarding whether defendant was also in default under the mortgage for failing to maintain the property in good condition and repair. Additionally, we note that, on appeal, plaintiff filed a motion to dismiss defendant's appeal and a motion for sanctions. Given the foregoing discussion, we deny the motions.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.